IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLYSON LEIGH SILVER, | : | |
|     Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| KILOLO KIJAKAZI, [1] | : | |
| Acting Commissioner of Social Security, | : | No. 21-cv-01918-RAL |
| | : | |
|     Defendant | : | |

**RICHARD A. LLORET**                                                                          January 3, 2024
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

      The Plaintiff, Allyson Leigh Silver (Ms. Silver) has appealed the final decision of the Commissioner of Social Security, which was rendered through the opinion of an Administrative Law Judge (ALJ). The ALJ's opinion denied Ms. Silver's claim for disability insurance benefits (DIB) under the Social Security Act (SSA). 42 U.S.C. §§ 401-434. The ALJ determined that Ms. Silver was not disabled under the SSA and its regulations. R. 31.[2] Plaintiff claims the ALJ committed error. Doc. No. 12 (Pl. Br.) at 3-4.[3] Because I find that the ALJ did not err, I affirm the Commissioner's decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to the administrative record are listed as "R. ____." The administrative record is located at ECF Doc. No. 15.

[3] Unless otherwise noted, as here, all references to the electronically docketed record are cited as "Doc. No. ___ at ___."

## PROCEDURAL HISTORY

In her application, Ms. Silver alleged a disability date of February 17, 2017. R. 16. After her application was denied at the initial review level, *id.*, Ms. Silver received a hearing before an ALJ, at which she and a vocational expert (VE) testified, in October 2019. *Id.* The ALJ found that Ms. Silver was not disabled, R. 31. The Appeals Council denied Ms. Silver's request for review. R. 5-7. This request for judicial review under 42 U.S.C. § 405(g) followed.

## FACTUAL BACKGROUND

### A.   The Claimant's Background

Ms. Silver's date last insured (DLI) for DIB is December 30, 2021. R. 19. Ms. Silver was born in 1987, and so was 30 years old on her alleged disability date, which qualifies her as a "younger person." R. 30. *See* 20 C.F.R. 404.1563. Her past relevant work was as a customer complaint clerk, a children's librarian, and as a manager of a recreation center. R. 29.

### B.   The ALJ's decision.

The ALJ found that Ms. Silver was not disabled under the SSA. R. 30-31. In reaching this decision, the ALJ made findings of fact and conclusions of law pursuant to Social Security's five-step, sequential evaluation process.[4] At steps one and two, the ALJ found that Ms. Silver met the insured status requirements of the SSA and had not

---

[4] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the RFC to perform the requirements of his past relevant work (PRW), if any; and (5) is able to perform any other work in the national economy, taking into consideration his RFC, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

engaged in substantial gainful activity (SGA) since February 17, 2017, the alleged onset date. R. 19. The ALJ found that Ms. Silver suffered from the following severe conditions: major depressive disorder, post-traumatic stress disorder, and degenerative disc disease of the cervical and lumbar spine. R. 19. In addition, the ALJ found that Ms. Silver suffered from a variety of non-severe conditions. *Id.* at 19-20. None of Ms. Silver's conditions equaled the severity of a "listing," at step three.[5] *Id.* at 20-22.

At step four the ALJ assessed Ms. Silver's residual functional capacity (RFC) and decided that Ms. Silver could perform sedentary work[6] with some restrictions. R. 22. The ALJ determined that Ms. Silver was unable to perform her past work. R. 29-30. At step five the ALJ determined that, considering Ms. Silver's age, education, work experience, and RFC, there were a significant number of jobs that she could perform in the national economy, based on the testimony of the VE. R. 30-31. As a result, the ALJ concluded that Ms. Silver was not disabled. *Id*.

## LEGAL STANDARDS

My review of the ALJ's decision is deferential. I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d

---

[5] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

[6] "Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations and citations omitted). It "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

Ms. Silver advances five[7] arguments:

1. The ALJ denied the plaintiff an opportunity to call her psychotherapist as a witness which was a violation of both regulations and general concepts of due process.

2. The ALJ failed to develop the record when faced with a reasonable diagnosis of Obsessive-Compulsive Disorder (OCD) that was made by a medical source other than an acceptable medical source.

3. The ALJ failed to properly evaluate the subjective evidence of pain.

4. The ALJ failed to properly evaluate the opinion of the treating orthopedist, Dr. Smith.

5. The ALJ's evaluation of the plaintiff's mental impairments were not supported by substantial evidence.

Pl. Br. 3-4.

1. **The ALJ did not abuse her discretion by refusing to take live testimony from Plaintiff's psychotherapist.**

Ms. Silver argues that the ALJ erred by opting not to take live testimony from Plaintiff's psychotherapist, Mr. Amarnick. Pl. Br. 10-16. Plaintiff contends that the decision not to receive live testimony was in violation of SSA regulations and a due process violation. *Id*.

The ALJ explained that due to time constraints, she would simply consider the therapist's treatment notes and medical source statement. R. 16. The ALJ mentioned

---

[7] Plaintiff has abandoned her sixth claim, that Commissioner Andrew Saul's appointment violated the Constitution, and that as a result the ALJ and Appeals Council Judges who decided this case lacked the power to do so. Reply Br. 1. Because the argument was abandoned, I need not address it.

5

that the Plaintiff's representative did not make a request in advance for a protracted hearing to accommodate lengthy testimony from the therapist. *Id.* The ALJ explained that she ordinarily scheduled hearings in one-hour increments and had to stick to the schedule to ensure that each claimant's hearing started promptly. *Id.* The ALJ carefully balanced the need for the testimony, the alternative means of obtaining the substance of the testimony (through documents), and the need to conduct orderly sessions, accounting for the needs of both Ms. Silver and other claimants who required hearing time. *Id.*

Decisions about the admission and management of evidence at an administrative hearing are reviewed for abuse of discretion. *Richardson v. Perales*, 402 U.S. 389, 400 (1971) ("the conduct of the hearing rests generally in the examiner's discretion"); *Warner-Lambert Co. v. Heckler*, 787 F.2d 147, 162 (3d Cir. 1986) ("[t]his discretion includes the power to make reasonable, nonarbitrary decisions regarding the admission or exclusion of evidence for procedural reasons.").

Here the ALJ considered the substance of the therapist's testimony by reviewing treatment notes and a medical source statement submitted by the therapist. R. 16. Reliance on this kind of documentary evidence is the norm in Social Security hearings and does not implicate due process concerns. *Richardson*, 402 U.S. at 400, 405-06; *Timothy M. v. Berryhill*, No. 17-CV-4664, 2019 WL 1238831, at *2 (D. Minn. Mar. 18, 2019) (plaintiff was not denied a full and fair hearing where his treating psychologist, who was present, was not allowed to testify at the hearing because the ALJ considered the psychologist's written statement and opinion). The ALJ's procedural decision was not arbitrary, but reasonable.

6

Nor has Ms. Silver shown particularized prejudice from the ALJ's decision. Plaintiff merely alleges that the therapist could have explained his opinion in more detail:

> Had the psychotherapist, Harry Carl Amarnick, MA, LMFT, been allowed to testify, he would have been able to address the reasons for his opinions, and why these limitations were supported by his records, and his observations, and also why these activities were not inconsistent with the plaintiff's limitations[.]

Pl. Br. 11. That is not enough. Harmless error analysis requires a particularized evaluation of the circumstances of the case to determine whether a supposed error would make a difference on remand. *See Shinseki v. Sanders*, 556 U.S. 396, 411-12 (2009) (harmless error focuses on "the facts and circumstances of the particular case"); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (generalized claim that an error was harmful was not sufficient to warrant a remand). The ALJ carefully assessed the evidence of plaintiff's mental status, which allays concern of harmful error. *See infra*, at 10-12.

I find the ALJ did not commit error, and that even if disallowing the therapist's live testimony was error, it was harmless.

2. **The ALJ did not commit error by failing to develop the record with evidence of plaintiff's Obsessive-Compulsive Disorder (OCD).**

Plaintiff argues that the ALJ failed to develop the record when faced with a reasonable diagnosis of obsessive-compulsive disorder (OCD) that was made by a medical source other than an acceptable medical source. Pl. Br. 3. I disagree.

An ALJ is responsible for reasonably developing the record, even when, as here, a claimant is represented by counsel. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003). Nevertheless, when a claimant is represented by counsel, it is ordinarily reasonable for the ALJ to rely on

7

counsel to present the best available case. *Wert v. Commissioner of Social Sec.*, Civ. No. 13–5705, 2015 WL 1808594, at *12 (E.D. Pa. 2015) (internal citations and quotations omitted).

This is not a case where the ALJ should have been alerted to the absence of pertinent records, either by obvious gaps in the evidence or by counsel's advice. Counsel did not ask for help from the ALJ to obtain records. The record contained minimal evidence of OCD. Plaintiff reported some symptoms of OCD, such as chewing ice and frequently eating the same meal, at the hearing and to her therapist; "given [her] reported symptoms" her therapist "add[ed] OCD as an additional d[iagnosis]." R. 20, 672. This was insufficient to establish OCD as a medically determinable impairment. *See* 20 C.F.R. § 404.1521. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." *Id*. The ALJ correctly explained that Mr. Amarnick was not an acceptable medical source under the regulations. R. 20, *citing* 20 C.F.R. § 404.1520 (an acceptable medical source is a licensed psychologist but not a therapist); *see also Rubendall v. Colvin*, No. 15-CV-1266, 2016 WL 4662429, at *9 (M.D. Pa. Aug. 15, 2016), report and recommendation adopted, 2016 WL 4611442 (M.D. Pa. Sept. 6, 2016) (noting that a therapist is a medical source but not an acceptable medical source). The record contains no objective evidence from an acceptable medical source establishing OCD as a medically determinable impairment. R. 421-32, 637-52.

A particularized showing of prejudice is necessary before I can grant relief because of a supposed error. Ms. Silver has not demonstrated that the ALJ committed error, nor that the purported error was harmful, having not pointed to substantial evidence of a severe OCD condition.

**3. The ALJ properly evaluated the subjective evidence of pain.**

Ms. Silver argues that the ALJ did not properly evaluate the subjective evidence of pain. Pl. Br. 18-21. Plaintiff complains of boilerplate included in the ALJ's opinion, *id*, at 18, but boilerplate is error only when there is no case specific analysis to back it up. The ALJ carefully considered the subjective evidence of pain in multiple paragraphs over two pages of the ALJ's opinion. R. 23–24. For instance, the ALJ noted that in her function report Ms. Silver alleged that she suffered from back pain. R. 23. The ALJ discussed the impact of Ms. Silver's back pain on her depression and anxiety, as well as her insomnia. *Id*. The ALJ balanced the discussion by noting that Ms. Silver is able to manage her own finances, and that with the help of sleep medications she sleeps 10 to 12 hours per night. *Id*.

The ALJ considered a third-party function report from claimant's fiancé, Antonio Santiago. R.23. Mr. Santiago's function report noted Ms. Silver's back pain, insomnia, migraines, depression, and anxiety. *Id*. The ALJ noted that Ms. Silver was fired from her last job for taking off too much time from work to care for her sick mother. R. 23-24. Ms. Silver's care for her mother's was quite extensive. R. 27. Physical examinations generally found Ms. Silver to be in no acute distress, to have a steady gait, and a good range of motion in her shoulders. R. 24. Diagnostic studies showed degenerative changes of the lumbar spine and cervical spine. R. 24. The ALJ concluded that the multiple imaging studies showed some disc degeneration but did not show severe abnormalities. R. 25. The ALJ noted that from time-to-time Ms. Silver did not attend physical and occupational therapy due to issues with the aesthetics of the location where the therapy was being performed. R. 25.

The ALJ carefully evaluated Ms. Silver's subjective evidence of pain and factored the evidence into the RFC. R. 22-29. The RFC determination was supported by substantial evidence. *Id*. The ALJ gave "serious consideration to [] claimant's subjective complaints of pain," *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985), and did not err.

4. **The ALJ properly ignored the legally defective opinion of the treating orthopedist, Dr. Smith.**

Ms. Silver contends the ALJ "failed to evaluate the opinion of the treating orthopedist, Dr. Smith." Pl. Br. 21. There was no medical opinion for the ALJ to consider. Dr. Smith simply opined that Ms. Silver was disabled and could not work. R. 635. That is an opinion reserved for the Commissioner. 20 C.F.R. § 404.1520b(c); *see Staheli v. Commissioner, SSA*, 84 F.4th 901, 906–07 (10th Cir. 2023). As such, it is neither valuable nor persuasive, and the ALJ need not have considered it. *Id*. Dr. Smith's treatment notes contained no discussion about Ms. Silver's ability to perform the physical tasks required by work. R. 635. Plaintiff's argument is meritless.

5. **The ALJ's evaluation of the plaintiff's mental impairments were supported by substantial evidence.**

Ms. Silver argues the ALJ did not properly evaluate the evidence of mental impairment. Pl. Br. 22. I disagree.

The ALJ spent two pages of her opinion discussing Ms. Silver's mental status, in connection with the step-three evaluation. R. 20-22. The ALJ also carefully assessed plaintiff's mental status at the step-four evaluation. R. 23-24, 25-28. The ALJ considered in detail Ms. Silver's functional report, the functional report by her fiancé, and her testimony. R 23-24. After a recapitulation of the evidence in the record, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained[.]" R. 24.

The ALJ noted that the plaintiff "presented normally on mental status examination, with no signs of depression, anxiety, or mood elevation and normal memory." R. 25. The ALJ spent considerable time discussing positive and negative aspects of plaintiff's mental health status treatment records, concluding that "the claimant is limited by her MDD, anxiety, and PTSD, but not to the extent alleged . . . She has not been psychiatrically hospitalized, been referred to higher levels of care, or participated in intensive outpatient treatment." R. 26.

The ALJ also noted that plaintiff's activities of daily living, including caring for her mother, were "informative regarding both her physical and mental impairments." R. 27. The ALJ considered the opinion of the State agency psychiatric consultant, Dr. Galdieri, and found it to be, "somewhat persuasive." *Id*. The ALJ concluded that plaintiff had more serious limitations than those recommended by Dr. Galdieri. *Id*. The ALJ discounted Mr. Amarnick's opinion that Ms. Silver had "extreme limitation to most fields," because the opinion was not well supported by Mr. Amarnick's own therapy records, nor were they consistent with other treatment records. R. 28. For instance, a psychiatric evaluation conducted at the Philmont Guidance Center on August 23, 2019 found Ms. Silver oriented, cooperative, with normal speech and motor activity, her affect congruent with her mood and conversation, her thought process appropriately goal oriented and free of hallucinations and delusions. R. 635. Mr. Amarnick's therapy records did not include mental status examinations. R 28. Mental status examinations

from other psychiatric records showed some psychiatric abnormalities, at times, but the ALJ reasonably found they did not document sufficient abnormality to support the severe functional impairments suggested in Mr. Amarnick's opinion. R. 28.

The ALJ noted that other records documented Ms. Silver being involved in activities that contradicted the extreme level of limitations suggested by Mr. Amarnick. R. 28. These activities included planning her own wedding, visiting her mother daily at a rehabilitation facility, and spending significant time and effort finding a drug rehabilitation program for a friend to attend. R 28. While none of these activities precluded a finding of disability, standing on their own, when added to the other evidence considered by the ALJ, they round out a picture supported by substantial evidence that justified the ALJ's decision.

## CONCLUSION

For the reasons described above, I will dismiss Ms. Silver's complaint and enter final judgment affirming the Commissioner's decision.

BY THE COURT:

*Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**